THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| REBECCA LOOMIS,<br><br>      Plaintiff,<br><br> v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF LICENSING,<br><br>      Defendants. | No. 3:10-cv-05332-RBL<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT<br>[Dkt. #17] |

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment [Dkt. #17]. The Court has reviewed the materials for and against the motion. Oral argument is not necessary to resolve the issues presented in the motion. For the following reasons, the Motion for Summary Judgment [Dkt. #17] is GRANTED.

**Factual History**

In 1999, the Health Care Authority of Washington (HCA) hired Ms. Loomis as the assistant administrator for the state's basic health program. She held that position for three years. While at HCA, she met Jan Smallwood, who held a position in human resources (HR) at the agency. Ms. Smallwood has testified that before Ms. Loomis arrived at HCA, employee morale was poor. Employee morale improved because Ms. Loomis "paid attention to [the employees] . . . and showed them they were valued."

ORDER - 1

In 2002, Ms. Smallwood encouraged Ms. Loomis to apply for the open position of Assistant Director for Administrative Services at the Department of Licensing (DOL). She was hired and remained in that position until 2005. Liz Luce, DOL's Director, appointed Ms. Loomis to a temporary position as the Deputy Director. Ms. Loomis held that position for a few months during which she applied for the position on a permanent basis. Ms. Luce, however, appointed Sharon Whitehead to the position. Ms. Loomis then transferred to the Drivers Services Division as its Assistant Director. Director Luce then named Alan Haight to replace Loomis as the permanent Assistant Director of the Administrative Service Division which later expanded to include all fiscal matters. The division was subsequently renamed as the Finance and Administration Division.

Over time, Ms. Loomis increasingly became the subject of claims by other staff. Deputy Director Whitehead advised Director Luce and Human Resources Director Smallwood of concerns raised by various members of Loomis' staff. Ms. Smallwood also heard several complaints directly from her own staff about Loomis. The complaints included that Loomis' management style was overly intrusive, that she was micromanaging, and did not trust others to make decisions. When Human Resource Director Smallwood attempted to discuss the complaints with Loomis, or assist her with various employment or personnel issues, Ms. Loomis was often uninterested and became argumentative.

Alan Haight observed that Loomis was difficult to work with, belittled employees, wanted her division's projects and initiatives pursued at the expense of other agency needs, and could be openly confrontational if challenged.

Ms. Loomis was named to lead the Enhanced Drivers License initiative in 2007. There was a great deal of strife, dissension, and turnover among staff involved in the project. Director Luce nominated Ms. Loomis for a Governor's excellence award to recognize her contribution to the success of the project. Eva Santos, the Director of the Washington Department of Personnel, who had been tasked by the Governor to screen the nominations, informed Director Luce she had received complaints about Ms. Loomis from

Drivers Services Division employees. Santos questioned Luce about the nomination. Ms. Luce informed Santos that she nominated Loomis for her work on the Enhanced Drivers License initiative, not her management skills as Assistant Director over Drivers Services.

Soon after the completion of the Enhanced Drivers License initiative, Deputy Director Whitehead announced her departure. Rebecca Loomis was one of four candidates to replace her. Director Luce selected Alan Haight to fill the Deputy Director position in May 2008. After he became Deputy Director, Haight provided a list of performance expectations to the entire Executive Leadership Team on June 4, 2008. Ms. Loomis continued to be the subject of staff complaints. The import of these complaints from employees, current and former, was that Loomis' management style was to micromanage without giving any real authority to her staff, and that there was fear of retaliation within Ms. Loomis' division for anyone who complained. Director Luce and Deputy Director Haight met with Loomis in July 2008, and directed that she work with a management consultant. They gave her a list of several areas that she needed to address.

Ms. Mansfield, the management consultant, concluded, among other things, that Ms. Loomis' "management style" did not fit DOL's then-existing "culture."

The final straw with Ms. Loomis was her habit of sending blind copies of emails. It is disputed by Ms. Loomis that Sharon Whitehead had instructed Ms. Loomis to stop sending "bcc" to texts and emails. Whitehead, before departing her position, claimed to have informed Haight of the "bcc" problem with Ms. Loomis. On March 12, 2009, Haight sent an email to Loomis, to which Loomis had replied. The Director was not listed as an addressee, nevertheless Director Luce responded. After reviewing other emails with "bcc" including one to an email response to an employee in Loomis' division who has expressed some concerns about her supervision with a blind copy to the supervisor, Haight confronted Loomis. Her responses caused Haight to believe she was being deliberately untruthful. Within a few days, Haight and Deputy Luce met to discuss the issue of blind copy emails. Haight expressed concerns regarding the loss of trust. Deputy Luce agreed and decided that

ORDER - 3

Ms. Loomis would be asked to resign at the conclusion of the legislative session. On April 29, 2009, Ms. Loomis was asked to resign but she refused. On May 1, 2009, Director Luce sent her a letter of termination effective May 29, 2009.

### A. Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Discrimination Based on Gender

To establish a prima facie case of discrimination under Title VII, plaintiff must demonstrate that 1) she is a member of a protected class; 2) she was performing her job in a satisfactory manner; 3) she suffered an adverse employment decision; and 4) she was treated differently than other persons outside her protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802; *Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 672 (9th Cir. 1988).

The plaintiff clearly is a member of a protected class: women. In her deposition, she testified:

> Q: Do you think your gender had anything to do with your termination?
>
> A: No, I don't think so.

Dep. Of Rebecca Loomis, 78:17-19. Clarke Decl. Exh. E [Dkt. #18]. Moreover, the woman who encouraged Ms. Loomis to seek employment with DOL (Smallwood), and the woman who employed her (Luce) are in agreement with the deficiencies in job performance that gave rise to her termination. There is nothing in the record that raises so much as an inference that the termination of Ms. Loomis is related to gender.

A valid, non-discriminatory, reason is posited by the State for the termination - numerous complaints about Ms. Loomis' poor interpersonal skills. It is alleged that she belittles others, she micromanages and lacks trust in others. She was at times insubordinate. Overall, her performance was unsatisfactory.

Under the *McDonnell Douglas* burden shifting formula,

> [a] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*See Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994). The ultimate burden then remains for the plaintiff to prove that the defendant's stated reason is in fact pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804.

Plaintiff does not satisfy her obligation to produce "specific and substantiated evidence of pretext." *Wallis v. J.R. Simplott Co.,* 26 F.3d 885, 890 (9th Cir. 1994). Ms. Loomis tries to revise the chronology of events in order to elevate a disagreement over a

ORDER - 5

vendor as the cause of her termination. In actuality, the concerns surfaced during the Enhanced Drivers License project, causing Director Luce and then Deputy Director Whitehead to ask Loomis to work with a management consultant. Ms. Loomis refused and threatened to quit.

Complaints and concerns about Loomis continued after she returned to her position as Assistant Director over Drivers Services in 2008. Again, Loomis was directed by Director Luce and Deputy Director Haight in July 2008 to work with a management consultant – nearly one year before she was terminated. The talking points and memo handed to Loomis outlining areas of concern is not disputed. Ms. Loomis also concedes that she was directed to make improvements as part of her draft 2008 evaluation, including expressions of concern by Deputy Director Haight regarding Ms. Loomis' trust and credibility issues.

There is nothing in the record that supports an allegation of discriminatory animus for Ms. Loomis as a woman, a Hispanic, or as a veteran. She simply disagrees with the conclusions of her superior officers about her leadership skills. As a high-level manager, however, she worked at the pleasure of the Director and could be terminated at any time, for any reason, except for an unlawful reason. No evidence or inference is presented that the decision was unlawful.

### C.    Discrimination Based on Veteran's Status

Effective July 22, 2007, the Washington Law Against Discrimination (WLAD) was amended to prohibit discrimination based on a person's "honorably discharged veteran or military status." Laws of 1007, Ch. 187, §9; RCW 49.60.180(2) and (3). Plaintiff's veteran's status claim takes issue with the same conduct as her gender claim detailed above. As with gender discrimination, Ms. Loomis fails to prove any direct evidence, or any

ORDER - 6

inference, of discriminatory intent. *Hill v. BCTI Income Fund-I,* 144 Wn.2d 172, 180-81 (2001), *overruled on other grounds, McClarty v. Totem Elec.* 157 Wn.2d 214, 228 (2006).

To establish a prima facie case of discrimination under WLAD a plaintiff must show: 1) she was within the statutorily protected group, 2) she applied for and was qualified for an available promotion, 3) she was not offered the position, and 4) the promotion went to a person outside of the protected group. *See*, *Kuyper v. Dept. of Wildlife*, 79 Wn. App. 732, 735, *reviewed denied,* 129 Wn.2d 1011 (1996) (age and gender discrimination). As to the fourth element, the undisputed record shows that the candidate selected for promotion to Deputy Director, Alan Haight, is also an honorably discharged veteran. Ms. Loomis was replaced by a veteran, Doron Maniece. On the Executive Leadership Team were veterans including Mykel Gable (Customer Relations Division Assistant Director); Marcus Bailey (Chief Information Officer); Tom Dotson (Chief Audit Executive); and Ralph Osgood (Business and Professions Division Assistant Director). There is an absence of any evidence to support Loomis' claim of discrimination on account of veteran status.

**D.     Retaliatory Wrongful Discharge**

The Plaintiff also alleges that she was terminated because she engaged in protected activities by 1) opposing an extension of the DOL's contract with Digimarc-LI, the vendor responsible for producing standard and enhanced Washington drivers' licenses; and/or 2) just prior to her termination, expressing her concern about a Department employee accessing driver data.

In order to prevail on a claim of wrongful discharge, a plaintiff must establish: 1) Washington has a clear public policy (the clarity element); 2) discouraging the conduct in which the employee engaged would jeopardize that clear policy (the jeopardy element); and 3) the plaintiff's policy-protected conduct caused the dismissal (the causation element).

ORDER - 7

A claim for wrongful discharge is available only when termination violates a clear mandate of public policy. *Korsland v. Dyncorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 178 (2005). The question of what constitutes a clear mandate of public policy is one of law. *Dicomes v. State*, 113 Wn.2d 612, 617 (1989). A clear public policy is not founded upon the subjective belief of an employee, rather, it must result from legislative action or judicially recognized by a prior court decision. *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 232 (1984). The public policy exception has generally been recognized when an employer terminates an employee as a result of his or her 1) refusal to commit an illegal act, 2) performance of a public duty or obligation, 3) exercise of a legal right or privilege, or 4) in retaliation for reporting employer misconduct. *See, Gardner v. Loomis Armored, Inc.,* 128 Wn.2d 931, 935-936 (1996). The public policy exception is to be narrowly construed in order to guard against frivolous lawsuits. *Gardner,* 128 Wn.2d at 936.

The two issues cited by Ms. Loomis do not raise issues of clear public policy. A contract extension with vendors doing business with the State is clearly justified where the issue has been submitted by the agency for review and have been approved by the State's Office of Financial Management. Similarly, the DOL can access driver data to ensure that its own employees are not involved gathering petition signatures on State time in violation of law.

Ms. Loomis did not complain that extending the contract with DigiMarc-LI or accessing driver record data was unlawful.[1]

---

[1] Ms. Loomis did make a complaint as a whistleblower, after she was terminated.

ORDER - 8

## Conclusion

For the foregoing reasons, the Defendants' Motion for Summary Judgment ([Dkt. #17] is GRANTED and the case is DISMISSED WITH PREJUDICE.

DATED this 14th day of September 2011.

                                              *(signature)*

                                              RONALD B. LEIGHTON
                                              UNITED STATES DISTRICT JUDGE